# GEORGE WILLIAMS *et al.*

*v.*

# THE PEOPLE OF THE STATE OF ILLINOIS.

1. JURY — *when discharged, their powers terminate.* Where, by agreement, on the trial of a party charged with larceny, the jury found their verdict, sealed it, left it with the clerk and separated; and it, when opened next day, was found to be defective in not finding the value of the property stolen, — it is error, three days after they agreed to their verdict, to get them together and have them supply the defect.

2. SAME — *when discharged, the court has no power to impanel.* Where a jury is discharged, they cannot be again impaneled in the case, without the consent of the parties.

3. VERDICT — *amendment of.* Where the parties agree that a jury may, seal their verdict and separate, and if the verdict is defective it should be amended unless otherwise expressed, this could only be held to apply to matter of form, and not to substance, — and the value of the property stolen is substance, as upon it depends the grade of the offense and the punishment.

4. JURY — *separation.* To permit a jury to mingle three days after hearing the evidence, with the community, and then to come together and find an essential fact in the case, would be attended with danger to liberty, and in disregard of all of the safeguards thrown around the accused to secure a fair and impartial trial.

5. SAME. When a jury is thus discharged, the further consideration of the case is as clearly out of their power as if they had come into court and their verdict received, and they discharged. This seems to be supported by reason as well as authority.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. SILAS L. BRYAN, Judge, presiding.

At the March Term, 1865, of the Marion Circuit Court, the grand jury presented an indictment against A. Munroe and George Williams, for stealing several hundred dollars' worth of United States treasury notes. They were apprehended, arraigned, and pleaded not guilty.

On the 25th of March, at same term, a trial was had before the court and a jury. After hearing the evidence and the arguments of counsel, and being instructed by the court, it was agreed by the parties, that, when the jury agreed upon their

verdict, they might seal it, place it in the hands of the officer having them in charge, and then they might disperse. They retired, found a verdict, placed it in the hands of the officer, and separated.

On the next day, when the verdict was read, it was found to be defective in not finding the value of the property. The court thereupon directed the sheriff to require the jury to again come into court. And, on the 29th of March, 1865, the jury, having come together, on being called answered to their names, when the case was again given to them for further consideration, when, after retiring, they returned another verdict, which also being found to be defective, they again retired and returned into court a verdict in form, and fixing the time of the confinement of the defendants at five years in the penitentiary.

Defendants thereupon entered a motion for a new trial, upon the ground, that the jury after they were discharged from the further consideration of the case were convened, and the case again submitted to them to amend their verdict by finding a material fact. The facts were shown by affidavits. The court overruled the motion, and rendered judgment on the verdict, and sentenced defendants to the penitentiary.

They bring the case to this court on error, and ask a reversal because the court below overruled the motion for a new trial.

Mr. B. B. SMITH, for the plaintiff in error.

Mr. R. G. INGERSOLL, Attorney General, for the people.

Mr. JUSTICE WALKER delivered the opinion of the Court:

After the evidence was heard, counsel had argued the case, and the court had instructed the jury, they retired to consider of their verdict, under an agreement of the counsel in the case, that they might seal their verdict, place it in the hands of the officer having them in charge, and separate. On the next day the parties appeared. The clerk, having received the sealed verdict, read it, but, being defective in not finding the value of the

property stolen, it was not received by the court. The court thereupon directed the sheriff to recall the jury, and require them to come into court and amend the verdict; and subsequently, three days after they found and delivered their verdict sealed up, the jury came into court, and under the direction of the court they retired to further consider of their verdict. They again returned a verdict, which being defective, they retired, and subsequently brought in the verdict upon which this judgment is rendered. Plaintiffs in error entered a motion for a new trial, which the court overruled, and rendered judgment on the verdict.

The action of the court in recalling the jury, and permitting them to find a new verdict, or to amend the one already returned, it is urged was such an irregularity as required the Circuit Court to grant a new trial. It is insisted, that, when the jury found their verdict and separated, under the agreement of the parties, they were thereby discharged from further consideration of the case, and, having been discharged, the court had no power to again impanel them, without the consent of the accused, to find a further verdict. It seems that counsel in the case, at the time the jury first retired, agreed to the amendment of the verdict, if, when it was opened, it was found to be defective; but, when it was read, the attorneys differed as to the terms of the agreement; but the court understood it to be that it might be amended, so as to put it in form. If, then, this was the agreement, it did not extend to substance ; and, as the finding of the value of the property determines the character of the crime whether it is grand or petit larceny, that part of the verdict is essential and of its substance. There can be no pretense that this amendment was only putting the verdict in form. Without such a finding the judgment could not be sustained.

Our system of jurisprudence has always been marked for the studious care that it observes, in all of its forms, to guard the accused against an unfair trial. This is a fundamental requirement, which is secured by the Constitution. The law requires that the jury shall be impartial, shall be sworn, and

shall hear the evidence, and shall separate from others, and privately, unaided, and free from all improper influences, find their verdict on the law and the evidence. It requires the officer to be sworn, that he will take them to a private place; will keep them together; that he will not permit others to converse with them, and the law prohibits him from doing so, except to ask them if they have agreed upon a verdict. It is designed that the jury shall be placed beyond all outside or improper influences; that they shall not know what others think of the case, or that opportunities should be had for tampering with them. To permit a jury to disperse, and mingle with the community at large, for three days, without being under a charge from the court not to converse themselves, nor permit others to converse with them, or in their presence, about the case, would be to afford every facility for operating on the minds of the jury, and might be highly prejudicial to the fair administration of justice.

Again, it is not probable, that the parties would have consented to the separation of the jury, without being charged by the court as to their duties, if they had supposed they were to be again convened to find a further verdict. From the statement of the agreement, as understood by the court, it must have been intended, that the jury were to be discharged from the further consideration of that cause, when they had sealed their verdict and placed it in the hands of the officer. The jury must have so understood it, as they did not meet the court the next morning, and only came together again when required by the court.

It must have been so regarded by the court, as the jury were not required to meet the court when it next convened. We are clearly of the opinion, that it was intended to, and did, discharge the jury by permitting them to separate, as much so as if they had come into court, their verdict had been read, and the court had said to them that they were discharged from any further consideration of the case, and they had dispersed. And we apprehend, that in such a case no one would contend, that they could be brought together to find

another verdict, or to amend the one already found in any material part.

If they may be called together three days after finding their verdict and being discharged, how long might the power be exercised? Would it end with the term, or might it be exercised at the next, or until prevented by the death of a portion of the jurors? If the jury might, under such circumstances, be permitted to be called together, and make an amendment of this character, why not any other, even extending the time of the confinement in the penitentiary to a much greater period? Such a practice is certainly too loose to be sanctioned. If allowed in one class of felonies it must be in others, even where life is at stake. After a jury has been discharged the case is beyond their control. *Sargent* v. *The State*, 11 Ohio, 477; 1 Bishop's Crim. Law, 830. The rule is supported by reason as well as by authority.

The judgment of the court below is reversed and the cause remanded.

*Judgment reversed.*